******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NATASHA B. *v.* DEPARTMENT OF CHILDREN
AND FAMILIES*
(AC 41187)

Sheldon, Keller and Bear, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court
dismissing her appeal from the decision of a hearing officer of the
defendant Department of Children and Families, who upheld the depart-
ment's decision to substantiate allegations of physical abuse, physical
neglect, and emotional neglect by the plaintiff against a minor child and
to place the plaintiff's name on its child abuse and neglect central
registry. The plaintiff claimed, inter alia, that the trial court improperly
concluded that a finding of chronicity was not required to place the
plaintiff's name on the central registry. Specifically, the plaintiff claimed
that, because the hearing officer made an explicit finding that there was
no chronicity, her name could not be placed on the central registry. *Held*:

1. The trial court properly concluded that a finding of chronicity was not
required to place the plaintiff's name on the child abuse and neglect
central registry; although the hearing officer must consider whether the
abuse was chronic, there was no requirement in the state regulations
or in the department's policy manual that the hearing officer must find
chronicity as a prerequisite to adding a person's name to the child abuse
and neglect central registry, and such a requirement would circumvent
the legislature's intent to prevent or discover abuse of children, as the
department would be left in the anomalous position of being unable to
list individuals on the central registry who commit a single severe and
intentional violent act against a child.

2. The trial court did not err in concluding that the hearing officer did not
improperly shift the burden of proof to the plaintiff when the hearing
officer scheduled a second hearing date so that the parties could present
evidence regarding whether the plaintiff had demonstrated changed
conditions that justified the removal of her name from the child abuse
and neglect central registry; although the hearing officer found that the
department had proved that the allegations against the plaintiff had
been substantiated and that it was appropriate to place her name on the
child abuse and neglect central registry, the hearing officer subsequently
provided the plaintiff with an opportunity to prove that her name should
be removed from the central registry in part by providing documentation
showing that, since the time her name was placed on the central registry
in 2007, changed conditions warranted the removal of her name from
the central registry, and because the plaintiff failed to prove those
changed conditions, the hearing officer reasonably concluded that she
could not make a finding that changed conditions existed sufficient to
modify the department's decision to include the plaintiff's name on the
central registry.

Argued January 14—officially released April 23, 2019

*Procedural History*

Administrative appeal from the decision by a hearing
officer of the defendant upholding a substantiation of
a finding of physical abuse, physical neglect, and emo-
tional neglect by the plaintiff against a minor child and
placing the plaintiff's name on the defendant's child
abuse and neglect central registry, brought to the Supe-
rior Court in the judicial district of Waterbury, where
the matter was transferred to the judicial district of New
Britain and tried to the court, *Huddleston, J.*; judgment
dismissing the appeal, from which the plaintiff appealed
to this court. *Affirmed*.

*Dale R. Funk*, for the appellant (plaintiff).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *George Jepsen*, former attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiff, Natasha B., appeals from the judgment of the trial court dismissing her appeal from the decision of a hearing officer of the defendant, the Department of Children and Families (department), who upheld the department's decision to substantiate allegations of physical abuse, physical neglect, and emotional neglect by the plaintiff against a minor child and to place the plaintiff's name on its child abuse and neglect central registry (central registry). On appeal, the plaintiff claims that the court improperly concluded that (1) a finding of chronicity was not required to place the plaintiff's name on the central registry, and (2) the hearing officer did not improperly shift the burden of proof to the plaintiff to demonstrate changed conditions that would justify removal of her name from the central registry. We affirm the judgment of the trial court.

The following facts, as found by the hearing officer, and procedural history are relevant to this appeal. The plaintiff was employed as a "one to one" worker for a thirteen year old minor child, C, at a residential treatment facility. On July 13, 2007, C was sent to her room after she and other residents began throwing chairs. C attempted to leave her room by forcing open the door while the plaintiff held the door shut from outside the room. After C forced open the door, the plaintiff pushed C back into the room, where a physical struggle ensued. During the struggle, the plaintiff repeatedly struck C in the face with a closed fist before other staff members separated the plaintiff and C. C was subsequently transported to the hospital after sustaining scratches and bruises to her face. As a result of the incident, the plaintiff was terminated from her position and was charged with risk of injury to a child and assault in the third degree. The charges against the plaintiff were dismissed in 2009 after she satisfied the conditions required for her accelerated rehabilitation.

After its investigation of the incident, the department substantiated allegations of physical abuse, physical neglect, and emotional neglect by the plaintiff against C[1] and placed the plaintiff's name on its central registry. See General Statutes (Rev. to 2007) §§ 17a-101g and 17a-101k.[2] On January 26, 2015,[3] the plaintiff, after being told by a prospective employer that her name was on the central registry, wrote a letter to the department seeking to remove her name from the central registry.[4] After receipt of the letter, the department scheduled a substantiation hearing. At the hearing, the plaintiff, who initially represented herself, testified about the 2007 incident with C and asserted that, since the incident, she had completed court-mandated counseling and community service and that she had not been involved in any other incidents with minor children.

On February 23, 2015, the hearing officer issued a

notice to both parties, stating that additional testimony and evidence was required to determine whether the plaintiff's name should remain on the central registry. Specifically, the notice informed the parties that they should be prepared to present evidence regarding whether the plaintiff had demonstrated changed conditions since the incident. Moreover, the hearing officer stated that specific documentation was needed from the plaintiff regarding her claims of completion of community service and counseling requirements, her job history, and confirmation that she had no further incidents with a minor child. The second day of the hearing took place on May 17, 2016.[5]

In her written final decision, the hearing officer upheld the department's decision to substantiate the allegations against the plaintiff for physical abuse, physical neglect, and emotional neglect of C and to place her name on the central registry. The plaintiff appealed to the trial court, which affirmed the decision of the hearing officer and dismissed the appeal.[6] The plaintiff then appealed to this court. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly concluded that a finding of chronicity[7] was not required to place the plaintiff's name on the central registry. Specifically, the plaintiff argues that, because the hearing officer made an explicit finding that there was no chronicity, her name could not be placed on the central registry. We disagree.

We begin our analysis by setting forth the standard of review and legal principles relevant to the resolution of the plaintiff's claim. "[J]udicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is limited. . . . When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Conclusions of law reached by the administrative agency must stand if . . . they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Internal quotation marks omitted.) *Recycling, Inc.* v. *Commissioner of Energy & Environ-*

*mental Protection*, 179 Conn. App. 127, 139–40, 178 A.3d 1043 (2018).

"The [central] registry scheme is codified in two sections that work in tandem: General Statutes §§ 17a-101g and 17a-101k. Section 17a-101g sets forth the [department's] responsibilities upon receiving a report of abuse or neglect of a child: classification; evaluation; investigation; and determination of whether abuse or neglect has occurred. General Statutes § 17a-101g (a) and (b). The statute directs that: '[i]f the [C]ommissioner of [Children and Families (commissioner)] determines that abuse or neglect has occurred, the commissioner shall also determine whether: (1) [t]here is an identifiable person responsible for such abuse or neglect; and (2) such identifiable person poses a risk to the health, safety, or well-being of children and should be recommended by the commissioner for placement on the [central registry] established pursuant to section 17a-101k.' General Statutes § 17a-101g (b). The [department] is directed under § 17a-101k (i) to adopt regulations to implement the provision of that statute." (Footnote omitted.) *Hogan* v. *Dept. of Children & Families*, 290 Conn. 545, 568–70, 964 A.2d 1213 (2009).

In accordance with § 17a-101k (i), the department promulgated regulations to implement the central registry. See Regs., Conn. State Agencies §§ 17a-101k-1 through 17a-101k-16.[8] Notably, § 17a-101k-3 (b) of the Regulations of Connecticut State Agencies provides in relevant part: "A person shall be deemed to pose a risk to the health, safety, or well-being of children, and *listed on the central registry, when* . . . (4) the individual responsible for physical or emotional abuse is a person entrusted with the care of a child . . . ." (Emphasis added.) Moreover, § 34-2-8 of the department's policy manual, the operative department policy at the time of the hearing,[9] provided that, once an allegation of neglect or abuse was substantiated, the department must identify the perpetrator, if possible, and make a separate finding as to whether that person should be placed on the central registry. Notably, § 34-2-8 stated in relevant part that "the identified perpetrator *shall* be recommended by investigations staff for placement on the [central registry], and *shall* be confirmed by the [h]earings [o]fficer for placement on the [central registry] when . . . the perpetrator of physical or emotional abuse is a person entrusted with the care of a child . . . ." (Emphasis added.) Furthermore, § 34-2-8 required the department, when determining whether a perpetrator poses a risk to the health, safety, and well-being of children and should be placed on the central registry, to "*look at* factors including the intent of the perpetrator, the severity of the impact and the chronicity of the perpetrator's conduct in making that determination."[10] (Emphasis added.)

In the present matter, the plaintiff argues that a find-

ing of chronicity *must* be made in order to place an individual on the central registry. As stated in the trial court's thorough and well reasoned memorandum of decision, although the hearing officer must *consider* whether the abuse was chronic, there is no requirement in the regulations or the department's policy manual that the hearing officer must *find* chronicity as a prerequisite to adding a person's name to the central registry.[11] If we were to accept the plaintiff's position that chronicity must be found in each case, the department would be left in the anomalous position of being unable to list individuals on the central registry who commit a single severe and intentional violent act against a child.[12] See, e.g., *State* v. *Peeler*, 267 Conn. 611, 615, 619, 841 A.2d 181 (2004) (defendant murdered seven year old child). This result would clearly circumvent the legislature's intent to prevent or discover abuse of children. See *Hogan* v. *Dept. of Children & Families*, supra, 290 Conn. 572–73 (purpose of central registry is to prevent or discover abuse of children).[13]

## II

The plaintiff next claims that the trial court erred in concluding that the hearing officer did not improperly shift the burden of proof to the plaintiff when the hearing officer scheduled a second hearing date so that the parties could present evidence regarding whether the plaintiff had demonstrated changed conditions that would justify the removal of her name from the central registry. We disagree.

The following standard of review and legal principles are relevant to the plaintiff's claim. "[P]lenary review applies to a question of misallocation of a burden of proof." (Internal quotation marks omitted.) *In re Jason R.*, 306 Conn. 438, 452, 51 A.3d 334 (2012). "[W]e are mindful that an opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding. . . . Furthermore, [w]e read an ambiguous trial court record so as to support, rather than contradict, its judgment." (Citation omitted; internal quotation marks omitted.) Id., 453.

Upon our review of the record and the hearing officer's decision, we conclude that the hearing officer did not improperly shift the burden of proof to the plaintiff. On the first day of the hearing, the hearing officer explicitly stated that the purpose of the hearing was to determine whether the department's decision to substantiate allegations against the plaintiff for abuse and neglect and to place her name on the central registry should be upheld.[14] The record further reveals that, during the first day of the hearing, the plaintiff testified, without providing any documentation, that, since the incident, she had completed counseling and community service and had not been involved in any further incidents. In light of this testimony suggesting changed conditions *after* the department substantiated allegations against

her in 2007, the hearing officer provided the plaintiff with an opportunity to submit specific documentation to corroborate her testimony.[15] See General Statutes § 4-181a (b) ("[o]n a showing of changed conditions, the agency may reverse or modify the final decision, at any time, at the request of any person or on the agency's own motion"). In other words, although the hearing officer found that the department had proved that the allegations against the plaintiff had been substantiated and that it was appropriate to place her name on the central registry, the hearing officer wanted to provide the plaintiff with an opportunity to prove that her name should be removed from the central registry pursuant to § 4-181a (b), in part by providing documentation which demonstrated that, since the time her name was placed on the central registry in 2007, changed conditions warranted the removal of her name from the central registry.

When considering whether the department's decision to place the plaintiff's name on the central registry should be upheld or reversed, the hearing officer, in her final decision, first considered the intent, severity, and chronicity criteria enumerated in § 17a-101k-3 of the Regulations of Connecticut State Agencies and § 34-2-8 of the department's policy manual, in addition to the plaintiff's lack of insight into and failure to accept responsibility for the incident. See *Hogan* v. *Dept. of Children & Families*, supra, 290 Conn. 566 (hearing officer considered plaintiff's failure to accept responsibility in upholding placement on central registry). The hearing officer's findings made it clear that the department had satisfied its burden of proof with respect to the plaintiff physically abusing C and being placed on the central registry.[16] The hearing officer, however, in a reasonable interpretation of the plaintiff's letter to the department, and in light of the plaintiff's testimony, gave the plaintiff an opportunity to prove the claim that she had raised, i.e., her changed conditions, which, if proved, would obviate the need for her to continue to be listed on the central registry. She failed, however, to prove those changed conditions.[17] The hearing officer, therefore, reasonably concluded that she could not make a finding that changed conditions existed sufficient to *modify* the department's decision to include the plaintiff's name on the central registry. Even if the conclusory paragraph of the hearing officer's decision contained ambiguities, as claimed by the plaintiff, a reading of the decision as a whole, in conjunction with an examination of the record, leads us to conclude that the hearing officer did not, at any time, improperly shift the burden of proof to the plaintiff.[18]

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open

for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

[1] The department also substantiated allegations against the plaintiff for physical neglect of another minor child who resided at the facility, but its decision was later reversed by the hearing officer.

[2] Hereinafter, all references to §§ 17a-101g or 17a-101k in this opinion are to the 2007 revision of those statutes.

[3] The plaintiff, in her argument to the trial court, claimed for the first time that the department violated § 17a-101k (b) by failing to notify her before she was placed on the central registry in 2007. The court declined to address this issue because it was not raised before the hearing officer at the plaintiff's substantiation hearing. On appeal to this court, the plaintiff does not raise any claim related to her alleged lack of notice.

[4] The plaintiff attached to her letter three character references and documentation that her criminal case was dismissed.

[5] The hearing was continued several times at the request of the plaintiff, who retained counsel before the second day of the hearing commenced.

[6] The court issued two memoranda of decision. The first memorandum of decision dismissed the plaintiff's appeal from the hearing officer's decision to uphold the department's determination to substantiate allegations of physical abuse, physical neglect, and emotional neglect by the plaintiff against C, but ordered supplemental briefing on the issue of whether to remand the case to the hearing officer for clarification on the allocation of the burden of proof. See *Natasha B.* v. *Dept. of Children & Families*, Superior Court, judicial district of New Britain, Docket No. CV-16-6034252-S (July 13, 2017). The second memorandum of decision addressed the issues of chronicity and the allocation of the burden of proof, which are the issues before this court on appeal. See *Natasha B.* v. *Dept. of Children & Families*, Superior Court, judicial district of New Britain, Docket No. CV-16-6034252-S (December 21, 2017). All references to the trial court's memorandum of decision refer to its second memorandum of decision unless otherwise noted.

[7] When looking at chronicity, a term that appears in the state regulations relating to the central registry, the department is to consider, inter alia, whether "there is a pattern or chronic nature to the neglect regardless of the measurable impact to the victim"; Regs., Conn. State Agencies § 17a-101k-3 (e) (3); and whether "there was a previous substantiation of neglect by the individual responsible for the current abuse or neglect for an incident or conduct unrelated to the current incident or conduct . . . ." Regs., Conn. State Agencies § 17a-101k-3 (e) (4).

[8] These regulations were adopted effective November 7, 2008. See footnote 11 of this opinion.

[9] Effective January 2, 2019, the department has updated its policy manual. The current version of the policy manual may now be found in § 22-4.

[10] The updated department policy manual; see footnote 9 of this opinion; clarifies that intent, severity, and chronicity do not all have to be found to place an individual's name on the central registry.

[11] The plaintiff raises for the first time in a single paragraph of her reply brief that the court and the department erroneously relied on statutes, regulations, and policy manual sections that were not in effect at the time the incident occurred in July, 2007. "It is also a well established principle that arguments cannot be raised for the first time in a reply brief. . . . *State* v. *Garvin*, 242 Conn. 296, 312, 699 A.2d 921 (1997); see also *SS-II, LLC* v. *Bridge Street Associates*, 293 Conn. 287, 302, 977 A.2d 189 (2009); *Calcano* v. *Calcano*, 257 Conn. 230, 244, 777 A.2d 633 (2001); *Commissioner of Health Services* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 659 n.2, 594 A.2d 958 (1991). [I]t is improper to raise a new argument in a reply brief, because doing so deprives the opposing party of the opportunity to respond in writing. . . . *Markley* v. *Dept. of Public Utility Control*, 301 Conn. 56, 74, 23 A.3d 668 (2011)." (Internal quotation marks omitted.) *State* v. *Myers*, 178 Conn. App. 102, 106, 174 A.3d 197 (2017). In any event, § 34-2-8 of the department's manual was effective on January 11, 2007, before the incident occurred.

[12] The hearing officer found that the plaintiff had no prior or subsequent incidents similar to that with C, so she determined that the chronicity criterion had not been met.

[13] To bolster her claim, the plaintiff quotes *Sanchez* v. *Katz*, Superior Court, judicial district of New Britain, Docket No. CV-12-66022396-S (July 10, 2014), for the proposition that "[w]ithout a finding that the same problem considered severe is also chronic, the hearing officer's conclusion cannot stand." In *Sanchez*, the trial court upheld the department's substantiation

of allegations against the plaintiff for physical neglect and her subsequent placement on the central registry. The trial court took issue with the hearing officer's reliance on one set of acts and omissions to find severity and another set of acts and omissions to find chronicity. Even if we were to agree with the inference that the plaintiff draws from her reading of *Sanchez* and conclude that its holding required a finding of chronicity to place the plaintiff on the central registry, we are neither persuaded nor are we bound by its reasoning.

[14] The hearing officer's final decision states that at issue in the hearing was whether the department's substantiation decisions and the inclusion of the plaintiff's name on the central registry should be upheld or reversed.

[15] Before the second day of the hearing commenced, the hearing officer stated that the second hearing date was necessary because she "needed additional information to address the issue of the central registry . . . [and] was giving the [plaintiff] the opportunity to submit additional information."

[16] With respect to the plaintiff's physical abuse of C, the hearing officer found that the department had proved, by a fair preponderance of the evidence, that the substantiation of the plaintiff should be upheld. The hearing officer found that the plaintiff, who repeatedly punched C in the face, had used unreasonable, aggressive, excessive and violent force, and that C had sustained injuries to her head, including bruises, scratches and swelling. The hearing officer also found that the plaintiff had reacted to C's behavior in an unruly, vicious and inappropriate manner. The plaintiff, on appeal, does not challenge these findings. There is, therefore, substantial evidence in the administrative record to support the hearing officer's findings of basic fact and the conclusions she drew from those facts, which are reasonable.

The hearing officer also upheld the substantiation of emotional neglect and physical neglect.

[17] We also agree with the court that the plaintiff was in the best position to provide documentation to support her own testimony regarding her changed conditions. Because the hearing officer essentially treated the plaintiff's testimony as a request to modify or reverse the department's decision in accordance with § 4-181a (b), it logically follows that the plaintiff would need to present evidence to demonstrate those changed conditions. See, e.g., *Brochard* v. *Brochard*, 185 Conn. App. 204, 243–44, 196 A.3d 1171 (2018) (In context of motion to modify custody and child support, "[t]he party seeking the modification has the burden of proving a substantial change in circumstances. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential." [Internal quotation marks omitted.]).

In its memorandum of decision, the court carefully analyzed the placement of the burden of proof in this case, stating: "In the order for a second day of the hearing, the hearing officer gave the plaintiff the opportunity to provide documentary evidence to corroborate her testimony, which could constitute evidence of changed conditions. This was within the hearing officer's discretion. [Section] 4-181a (b) provides that '[o]n a showing of changed conditions, the agency may reverse or modify the final decision, at any time, at the request of any person or on the agency's own motion.'

"It is clear from the decision that the hearing officer correctly held the department to its burden of proof on the facts underlying the substantiation for physical abuse, physical neglect, and emotional neglect. See Record, p. 63 (finding that department 'has proven, by a fair preponderance of the evidence, that its substantiation of the [plaintiff] for the physical abuse of [C] shall be upheld'); and p. 64 (identifying standards that department was required to demonstrate for substantiation of emotional neglect and physical neglect). In the discussion of the [central] registry, the hearing officer clearly and correctly stated the standards the department was required to apply to include a person on the [central] registry. . . . It is clear that the hearing officer found the initial inclusion on the [central] registry to be justified based on the evidence of the severity of the plaintiff's conduct and of her intent, despite [no] showing of previous or subsequent incidents. The hearing officer also considered the plaintiff's lack of insight and failure to accept responsibility for the incident. . . . [T]he hearing officer was not precluded from considering these facts. [Our] Supreme Court has recognized that the

failure to accept responsibility for abuse 'reasonably may be considered as an indication that there is a risk that the abuse will continue.' *Hogan* v. *Dept. of Children & Families*, supra, 290 Conn. 566." (Citation omitted.)

[18] The final paragraph of the hearing officer's decision concludes: "Based on the intent and severity, as well as the [plaintiff's] lack of insight gained since the incident and her failure to provide any additional support about whether she has had a successful employment history, it is found that the [plaintiff] does pose a risk to the health, safety and well-being of children. Therefore, the inclusion of the [plaintiff's] name on the department's central registry shall be upheld."

---